**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

SUN LIFE ASSURANCE COMPANY                                                    PLAINTIFF
OF CANADA (U.S.), n/k/a DELAWARE
LIFE INSURANCE COMPANY

v.                                          No. 5:15CV00023 JLH

JAMES L. NELSON; SHANNON D. NELSON;
and JAMES W. NELSON                                                           DEFENDANTS

<u>**OPINION AND ORDER**</u>

On April 24, 2000, Sun Life issued to James L. Nelson an annuity contract in which he was

designated as the participant and the annuitant.  Document #1-1 at 4.  His wife, Nellie R. Nelson,

was designated as the beneficiary.  *Id.*  The annuity commencement date was June 1, 2031.  *Id.*  On

or about February 8, 2011, James L. Nelson submitted forms to make Nellie R. Nelson a co-owner

and to change the designated beneficiary to his sons, Shannon D. Nelson and James Wendell Nelson.

Documents #1-3 and #1-4.  Based upon those changes, the contract specifications page of the

contract was changed to show that the "Owner" was James L. Nelson and Nellie R. Nelson, the

"Annuitant" was James L. Nelson, and the "Beneficiary" was "multiple beneficiaries on file."

Document #10-1 at 5.  On September 17, 2014, Nellie R. Nelson died.  Document #1-6.  Delaware

Life sent a form to Shannon D. Nelson and James W. Nelson for them to disclaim any rights under

the contract, but Shannon D. Nelson returned the form to Delaware Life stating that he declined to

disclaim the benefits under the contract.  Document #1-7.  James L. Nelson then notified Delaware

Life that he did not believe that the death benefit was payable and that he was electing to withdraw

the full cash value of the contract.  Document #1-8.

    In response to what it deemed to be competing claims, Delaware Life filed its complaint for

interpleader in this action, asking to interplead the proceeds of the contract into the registry of the

Court and to be discharged from all liability under the contract.  Delaware Life alleged that the contract provides a death benefit of $100,000 and the parties are diverse in citizenship, invoking this Court's jurisdiction under 28 U.S.C. § 1335.

The Court granted Delaware Life's motion to interplead the funds, and ordered Delaware Life to deposit into the registry of the Court either the cash value or the death benefit, whichever was greater.  Delaware Life deposited the death benefit of $100,000 into the registry of the Court.[1] James L. Nelson has filed a motion for summary judgment, which Shannon D. Nelson opposes.[2]

"When a contract is unambiguous, its construction is a question of law for [the] court." *Artman v. Hoy*, 370 Ark. 131, 136, 257 S.W.3d 864, 869 (2007).  Arkansas courts "apply three well-established principles of contract law." *Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1212 (8th Cir. 2012) (quoting *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 169, 832 S.W.2d 816, 819 (1992)).  The first rule of interpreting a contract is to "ascertain and give effect to the intention of the parties."  *Smith*, 664 F.3d at 1212 (quoting *Harris v. Stephens Prod. Co.,* 310 Ark. 67, 72, 832 S.W.2d 837, 840 (1992)).  To determine the intention of the parties, Arkansas courts look to the contract as a whole and the circumstances surrounding its execution.  *Griffin*, 310 Ark. at 170, 832 S.W.2d at 820.  Second, in construing a contract, Arkansas courts "must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning." *Id.* at 169, 832 S.W.3d at 819 (quoting *Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Milburn*, 269 Ark. 384, 386, 601 S.W.2d 841, 842 (1980)).  Third, "different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all

---

[1] The Court awarded Delaware Life attorneys' fees and costs in the amount of $14,002.32 payable from the interpled funds, leaving a balance of $85,997.68.

[2] James W. Nelson has not responded to the motion for summary judgment.

possible." *Griffin*, 310 Ark. at 169-70, 832 S.W.2d at 819 (quoting *Cont'l Cas. Co. v. Davidson*, 250 Ark. 35, 41, 463 S.W.2d 652, 655 (1971)). "A construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions." *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 144, 147 S.W.3d 681, 686 (2004).

"When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed." *Artman*, 370 Ark. at 136-37, 257 S.W.3d at 869. "The initial determination of the existence of ambiguity rests with the court and, if the writing contains a term which is ambiguous, parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder." *Griffin*, 310 Ark. at 169, 832 S.W.2d at 819. Nonetheless, "[t]o arrive at the intention of the parties to a contract, courts may acquaint themselves with the persons and circumstances and place themselves in the same situation as the parties who made the contract." *Stokes v. Roberts*, 289 Ark. 319, 323, 711 S.W.2d 757, 759 (1986). "Language in a contract is ambiguous when there is doubt or uncertainty as to its meaning or it is fairly susceptible of two interpretations." *Denton v. Pennington*, 82 Ark. App. 179, 183, 119 S.W.3d 519, 521 (2003).

The basic provision of the contract provides:

> [The Company] will pay an annuity commencing on the Annuity Commencement Date, by applying the adjusted value of the Accumulation Account in accordance with the settlement provisions. If the Owner dies while the Contract is in effect and before the Annuity Commencement Date, the Company may pay a Death Benefit to the Beneficiary upon receipt of Due Proof of Death of the Owner. Under certain circumstances, if the Owner dies prior to the Annuity Commencement Date, a distribution is required by law. This Contract is the legal Contract.

Document #1-1 at 1. The term "annuitant" is defined as follows:

> The person or persons named on the Contract Specifications page on whose life the first annuity payment is to be made. If the Annuitant dies prior to the Annuity Commencement Date, the new Annuitant will be the Co-Annuitant, if any. If the Co-

Annuitant dies or if no Co-Annuitant is named, the Owner becomes the Annuitant upon the Annuitant's death prior to the Annuity Commencement Date.

*Id*. at 6.  The term "owner" is defined as follows:

The person named in the Contract Specifications page who is entitled to exercise all rights and privileges of Ownership under the Contract.  The Owner may designate a trustee or custodian of a retirement plan . . . but the term Owner, as used herein, refers to the organization entering into the Contract.

*Id*. at 7.

The initial issue is whether the death of Nellie R. Nelson triggered payment of the death benefit.  The relevant portion of the death benefit provision in the contract provides:

If the Owner dies while this Contract is in effect and before the Annuity Commencement Date, upon receipt of Due Proof of Death, the Company may pay a Death Benefit to the Beneficiary in accordance with this Death Benefit provision. If the Owner is not a natural person, the Annuitant is considered the Owner for the purpose of this Death Benefit provision.

*Id*. at 14.

The first sentence of this provision contemplates that "the Owner" is one natural person, not a corporation or two natural persons.  If the first sentence contemplated that there could be more than one owner whose death could trigger payment of the death benefit, it would say, "[i]f *an* owner dies" rather than "[i]f *the* Owner dies . . . ."  When "the Owner" is a corporation or more than one natural person, according to the second sentence, death of "the Annuitant" triggers payment of the death benefit.  Thus, when there are co-owners of the contract, the different owners may exercise ownership rights, but only one of them will be the annuitant whose death will trigger payment of the death benefit.

In this instance, the annuitant was James L. Nelson.  Because Nellie R. Nelson was not the annuitant, her death could not trigger the death benefit unless James L. Nelson predeceased her and she became the annuitant, which did not happen.

Shannon D. Nelson has argued that 26 U.S.C. § 72(s)(1)(B) provides to the contrary.  That section of the statute provides, "[a] contract shall not be treated as an annuity contract for purposes of this title unless it provides that . . . if any holder of such contract dies before the annuity starting date, the entire interest in such contract will be distributed within 5 years after the death of such holder."  Twenty-Six U.S.C. § 72 governs the conditions under which annuity payments under annuity contracts are treated as gross income for income tax purposes.  *See* 26 U.S.C. § 72(a).  The statute does not, however, purport to alter the terms of any annuity contract.[3]

James L. Nelson is the owner of the annuity contract, as well as the person who contributed all of the funds used to purchase it.  The contract provides that an owner may withdraw the entire cash value of the contract at any time prior to the Annuity Commencement Date.  Document #1-1 at 12.  The Annuity Commencement Date is June 1, 2031.  *Id*. at 4.  Therefore, James L. Nelson is the only person who may be entitled to the funds that have been deposited into the registry of the Court.

For the reasons stated, James L. Nelson is entitled to the proceeds of the annuity contract.  His motion for summary judgment is therefore GRANTED.  Document #32.  A judgment will be entered separately.

IT IS SO ORDERED this 28th day of July, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[3] Shannon D. Nelson makes no claim for benefits under the contract except the death benefits, so the Court will not address other provisions of the contract.